FRANK RIDGLEY, Appellant, v. FRANK DeBOUGH, Appellee.

1. **Practice in Supreme Court:** EQUITY CAUSE: RECORD: TRIAL DE NOVO. Where the appellant's abstract as amended, in an equity cause, alleged that it contained all the evidence introduced, or offered to be introduced, and all objections made thereto, and rulings made thereon, *held*, that, in the absence of any denial by the appellee, it would be deemed to contain all the evidence, and to entitle the appellant to a trial *de novo*.

2. **Lease of Lands:** VALIDITY. The mother of H., being the owner of the forty acres of land in question, the taxes upon which had been paid by the latter, authorized H. to lease the land, or sell the grass thereon, and thereby reimburse himself for the payment of taxes thereon, but stated that she would rather pay the taxes herself than to have the land so leased as to prevent a sale of the land. In pursuance of such authority H. leased the land to plaintiff in March for

one year, making the lease in his own name. In the following May his mother made a contract for the sale of the land and agreed to convey all her right, title and interest therein. *Held*, that H. had a right to make a lease in his own name, and on his own behalf, and that the plaintiff was entitled thereunder to the use and occupation of the land for the term of the lease.

*Appeal from Audubon District Court.* — Hon. N. W. Macey, Judge.

Friday, May 29, 1891.

Action to enjoin the defendant from the use and occupation of a forty-acre tract of land in Audubon county. The district court gave judgment for the defendant, and the plaintiff appeals. — *Reversed.*

*I. L. Statzell* and *J. M. Griggs*, for appellant.

*H. W. Hanna*, for appellee.

Granger, J.—I. Appellee objects to the trial of the cause *de novo* because the abstract does not purport to be one "of all the evidence." The abstract, as amended, shows that it contains all the evidence introduced, or offered to be introduced, and all objections made thereto, and rulings made thereon. The appellee files no abstract putting in issue the statement, and it is sufficient.

1. Practice in the supreme court: equity cause: trial de novo.

II. On the twenty-third day of March, 1888, Lavina Hanna, residing at Cedar Rapids, Iowa, was the owner of the forty acres of land in question. On that day a written lease of the land for one year was made to the plaintiff, to which the name of H. W. Hanna appears as lessor. On the twelfth day of May, 1888, Lavina Hanna entered into a written contract with the defendant for the sale of the land for four hundred and forty dollars, with a payment of seventy-five dollars in hand, and the

2. Lease of lands: validity.

balance in installments, the last to become due May 12, 1893. Upon performance by the defendant, Lavina Hanna agreed, in effect, to convey to him all her "rights, title and interest in and to the real estate." The right of possession during the period of performance by the defendant is left entirely to legal inference. It is not in terms given to the defendant by the contract. These contracts constitute the basis of the respective claims of the parties to the use and occupancy of the land. The defendant, being a herdsman, insisted upon a right to pasture the land, and at the instance of the plaintiff an injunction issued to restrain him. The case may be said to turn upon the validity of the contract or lease of the land to the plaintiff. As before said, the lease has to it the name of H. W. Hanna as lessor, and it is insisted that the name is there without authority, and that hence the contract is without effect. H. W. Hanna is a son of Lavina Hanna, and resides in Audubon county. His mother formerly resided there, but moved, some four years ago, to Cedar Rapids. During this time she has owned the land, and from the testimony of H. W. Hanna for the defendant it appears that since his mother left Audubon county he has on his own account paid the taxes for her on the land; that he was at Cedar Rapids the winter before, and his mother said she did not like to have him pay the taxes, and asked him if he could not get enough out of the grass from the land to pay the taxes, so that he would not have them to pay; and he told her he thought he could; that it would rent for that, but would injure the sale of it; and she said she did't want him to do anything to "avoid the sale," as she wanted the money as soon as she could get it. On cross-examination Mr. Hanna said: "My mother left here about four years ago, and has not been here since. She lives at Cedar Rapids. I told Ridgley he could have the use of the land for the taxes. After the lease

was made it was deposited in my safe, and then afterwards Mr. Ridgley paid me fifty cents in money, being the balance due on the rent. Received this fifty cents after the land was sold to DeBough. I had been paying her taxes and sent her the receipts, ever since we had owned this land, and she said she didn't think I ought to be paying her taxes without getting some benefit from it. I told her I didn't see how I could get enough for it without I leased the land or sold the grass; she asked me if that could not be done, and I told her it probably could, but it might affect a sale if it were leased out for a year, and she said she would rather pay the taxes herself than to have land leased so it would prevent a sale being made.'' Mrs. Hanna was not a witness, and her son's is the only testimony from which we may know his understanding with his mother as to his right to lease, or so use the grass on the land as to pay the taxes. The facts as to the making of the lease are about as follows: Mr. Moore was the clerk for Mr. Hanna, who is an attorney at law. The plaintiff saw Mr. Hanna on the day the lease was made, and they had some talk about the lease, and Hanna, being called away by sickness in his family, directed his clerk to draw up a lease. The rental value of the land was to be the amount of the taxes for the year. The amount was that day ascertained to be six dollars and forty cents and the plaintiff paid Mr. Moore five dollars and ninety cents, for which Moore gave the receipt of Mr. Hanna, and afterwards, May 30, 1888, plaintiff paid the remaining fifty cents to Mr. Hanna. The money was applied in payment of the taxes. Mr. Moore signed the name "H. W. Hanna" to the lease, and the plaintiff attached his signature. The lease is silent as to any forfeiture in case of a sale, and is for the period of one year. The value of the land for rent that year consisted entirely of the grass thereon for hay or pasturage. Mr. Hanna, in his testimony, says

that he told the plaintiff that his lease must be subject
to a right to sell the land; that he "would not prevent
its being sold on account of the lease." He also says
in his direct evidence: "In case the land should be
sold the agreement was rather indefinite. I told him
that we would have no trouble in relation to that part
of it." These statements are denied by the plaintiff.

It may be well to first settle the point as to Mr.
Hanna's authority to deal with the land. It seems to
us from the statements and conduct of Mr. Hanna that
he understood that he had the right to so use the land
that the grass thereon, for hay or pasturage, should save
him from the payment of taxes. This he might do by
selling the grass or leasing the land. There is nothing
to show that his mother had not the same understand-
ing. It is important to keep this fact in view: That
between Mrs. and Mr. Hanna both understood that Mr.
Hanna assumed the burden of paying the taxes, and he
was to use the land to save him therefrom. The case
does not involve a question of agency. The grass was
not to be sold or the land leased for her, but for him.
In so doing she desired him to so use it as not to prevent
a sale. This, we think, was a matter that she confided to
his judgment. It would be a harsh construction of his
authority in such a case to say: "If he had sold to
A the grass on the land for that year for hay for the
payment of taxes due, and A paid them, and after-
wards, before the haying season Mrs. Hanna sells the
land, that A forfeits his right because of a want of
authority in Mr. Hanna to so contract. In other words,
that the sale would be void as without authority."
With our view of the facts, Mr. Hanna had the right to
make the contract in his own name and on his own
behalf. It appears to us that this must have been the
idea of Mr. Hanna as to his authority to use the land,
for on the morning after the lease was made Mr. Moore
told him the lease was in the safe, and that the money

paid had been applied 'on the taxes. Hanna then knew there was a lease executed, and that Moore must have acted for the lessor. Moore was Hanna's agent, but not that of his mother. Hanna did not then dispute the right of Moore to execute the lease on behalf of some one, or even stop to know its contents. Assuming, then, as we must, an authority of Moore to act we can only assume his authority to act for Mr. Hanna. This disposes of the much controverted point in the case as to the authority of Mr. Hanna as an agent to bind his mother by the execution of the lease, for it is his lease, and not hers.

The equities of the case are strongly in favor of the plaintiff. He leased the land in good faith and paid the rent. There is no claim that the rent paid was not adequate. It was the same that the defendant had before paid for the use of the land. The claim that it was paid to be forfeited if the land was sold is so unusual, and such a contract is so wanting in mutual benefits, as to awaken doubts where the proof is not strong in its support. With the proper issues to reform the contract the testimony would be entirely insufficient. The defendant made this contract of purchase with knowledge of the plaintiff's claim, and has no equities in his favor as an innocent purchaser.

There should be a decree for the plaintiff, with costs, and the cause is remanded for that purpose. REVERSED.